Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | JOHN A. NORDBERG | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 1800 | DATE | December 1, 2000 |
| CASE TITLE | Lonnie Johnson vs. Chicago School Reform Board of Trustee | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the accompanying Memorandum Opinion and Order, the defendant Board of Education's motion to dismiss (#14) is granted in part and denied in part. Counts II and V of the amended complaint, along with the plaintiff's request for an award of punitive damages against the Board of Education, are dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The motion is denied with respect to Count III. Thus, the plaintiff may proceed against the Board of Education on Counts I, III and IV (and against the defendant Chicago Contract Cleaning & Supply Company on Count VI). The Board of Education is directed to answer or otherwise plead to Count III within twenty-one days of the date of this order.

(11) ■ See attached Memorandum Opinion and Order.

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 0 5 2000 | |
| | Notified counsel by telephone. | | date docketed | 23 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | FILED | | |
| | | 00 DEC -4 PM 1: 53 | date mailed notice | |
| mjm | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LONNIE JOHNSON, | ) | **DOCKETED** |
| | ) | DEC 0 5 2000 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) NO. 00 C 1800 | |
| | ) | |
| CHICAGO BD. OF EDUCATION, et al., | ) HONORABLE JOHN A. NORDBERG | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Lonnie Johnson, has brought this action pursuant to 42 U.S.C. §§ 1983, 1985 and 2000e. The plaintiff claims that the defendants, the Board of Education of the City of Chicago and Chicago Contract Cleaning and Supply Company, have discriminated against the plaintiff, subjected her to sexual harassment and retaliation, and engaged in a conspiracy against her. This matter is before the court for consideration of the defendant Board of Education's[1] motion to dismiss Counts II, III and V of the amended complaint for failure to state a claim. For the reasons stated in this order, the motion will be granted in part and denied in part.

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir. 1996). In

---

[1] The plaintiff is still in the process of obtaining service on Chicago Contract Cleaning and Supply Company. Chicago Contract has not joined the motion to dismiss.

ruling on a motion to dismiss, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992) (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A motion to dismiss tests the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A claim may be dismissed only if it is beyond doubt that under no set of facts would a plaintiff's allegations entitle her to relief. *Travel All Over the World, Inc.*, 73 F.3d at 1429.

## FACTS

The plaintiff alleges the following facts, which must be accepted as true for purposes of this motion: The Board of Education of the City of Chicago has employed the plaintiff since October 1989. Chicago Contract Cleaning and Supply Company, a corporation that provides custodial and janitorial services, has or had a contract with the Board of Education to provide its janitorial services to Amundsen High School in addition to the publicly employed custodians.

The Board of Education first hired the plaintiff as a lunch room attendant. While in that position, the plaintiff was assigned to a number of different schools throughout Chicago.

In the early 1990s, the plaintiff applied for a custodial position. As part of the application process, she was administered and passed an examination.

The plaintiff was first placed at the Gale Elementary Academy. While at Gale, the plaintiff received "exceptional" ratings for her janitorial work, earning 99 points out of a possible 100 points in both 1995 and 1996.

In July 1996, the plaintiff was assigned to Amundsen High School. The plaintiff worked the "night" shift, from 4 p.m. to 12:30 a.m. At the time of the plaintiff's transfer, the custodial staff at Amundsen consisted of both Board employees and private custodians supplied by Chicago Contract. The plaintiff was the only female on Amundsen's custodial staff.

On October 30, 1997, a private custodian, Jose Gonzalez, threatened the plaintiff. The plaintiff reported the incident to Chicago Contract and filed a police report. The plaintiff also reported the matter to her supervisor, Michael Haduch. Gonzalez did not return to Amundsen High School after that incident.

Beginning in early 1998 and continuing through October 1998, the plaintiff suffered numerous acts of sexual harassment at the hands of certain private custodians, principally Manuel DeOca, Moises Galva, Jose Pena, and Emilio Lebron. The acts included intentional physical contact, acts of intimidation, sexual epithets and gestures, and "hazing." The incidents often occurred late at night, when the custodial crew were the only people in the building. The plaintiff repeatedly reported the incidents to Haduch during this period, both in person and in writing.

Haduch sometimes urged the plaintiff to "try to get along," or suggested that she transfer elsewhere. He once conceded that the private custodians' conduct constituted sexual harassment, but observed that a double standard existed. On another occasion, he told the plaintiff that she "knew how to play the game," although he later apologized for that comment. Haduch never took any steps to curb the conduct of the private custodians.

3

The plaintiff also reported the incidents of harassment to the Chicago Contract crew chief, Francisco Cerna. Cerna took no remedial action.

On April 17, 1998, when Cerna's supervisor, "George," visited Amundsen High School, the plaintiff requested that he speak to the private custodians and ask them not to bump up against her or use sexual epithets. The plaintiff observed George walk over to DeOca and Galvan; he motioned with his shoulder as if bumping into someone, then the three men laughed together.

On April 20, 1998, a meeting of the entire custodial staff, both public and private, took place. Mr. Haduch, Mr. Cerna and George were present. The plaintiff complained about the abusive language and other acts of perceived intimidation and harassment. Cerna encouraged the plaintiff to "forget" about incidents of the past. George told her not to file any more police reports, and that everyone should get along. Throughout the meeting, Haduch sat on a counter, swinging his legs back and forth and humming a tune.

On July 29, 1998, the plaintiff telephoned the office of Chicago Contract to report the conduct of the private custodians. She left her name and telephone number, but her call was never returned.

On July 30, 1998, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission.

Despite the plaintiff's repeated reports to her supervisor and the Chicago Contract supervisor, as well as her E.E.O.C. filing, the alleged harassment continued.

On September 1, 1998, Haduch distributed a memorandum announcing a meeting of the entire custodial crew, both public and private. One item on the agenda was the plaintiff's E.E.O.C. charge. Haduch read a brief statement from the memorandum, defining sexual harassment and giving examples of conduct that would be considered harassment. Haduch stated that Chicago Public School policy barred such behavior.

Nevertheless, the sexual harassment continued after the meeting.

In an October 15, 1998, memorandum from Haduch to the plaintiff, he acknowledged the ongoing acts of harassment. In a second memorandum that day, Haduch announced that the plaintiff was being reassigned to the day shift. His stated reason for the shift change was that, should incidents of sexual harassment occur in the future, supervisory personnel would be present so that the plaintiff could report them immediately.

The plaintiff informed Haduch that she was attending college during the day. She asked to remain on the night shift, or to be assigned a midnight to 8 a.m. shift where she could work alone. Haduch refused, citing the plaintiff's safety as a concern. As a result of the unwanted shift change, the plaintiff was forced to withdraw from classes that semester.

During the plaintiff's tenure with the Board of Education, she received regular pay increases. Until 1998, she customarily earned very high evaluations in annual performance reviews.

In June 1998, Haduch's performance evaluation indicted that the plaintiff had met all "high importance" task standards and had exceeded the "primary importance" task standard, namely maintaining the cleanliness and repair of the school building. Haduch indicated that

the plaintiff failed to meet one performance standard, that of working well with her colleagues. In the comment section, Haduch wrote, "Needs to get along with private custodians." The overall rating fell below the plaintiff's usually exceptional evaluations.

On December 28, 1999, the E.E.O.C. dismissed the plaintiff's charge based on her failure to cooperate in the investigation. (*See* right-to-sue letter.) This suit followed.

## **DISCUSSION**

The defendant's motion to dismiss is granted as to Counts II and V. Even accepting the plaintiff's factual allegations as true, those counts fail to state a claim as a matter of law. Furthermore, the plaintiff cannot recover punitive damages from the Board of Education. The motion to dismiss is denied, however, as to Count III.

In Count I, the plaintiff alleges that the Chicago Board of Education was aware of pervasive acts of sexual harassment by Chicago Contract employees but failed to take necessary corrective action, in violation of Title VII. In Count IV, the plaintiff contends that her transfer to the day shift violated Title VII's prohibition against sex discrimination. The Board of Education does not challenge either Count I or Count IV at this stage of the proceedings. Count VI, wherein the plaintiff sues Chicago Contract for intentional infliction of emotional distress, is likewise not a subject of the motion to dismiss.

In Count II, the plaintiff maintains that the defendant violated her Fourteenth Amendment right to equal protection by failing to address the sexual harassment. Even accepting the plaintiff's factual allegations as true, the court finds that Count II of the amended complaint fails to state a colorable cause of action under 42 U.S.C. § 1983.

The Board of Education cannot be held liable under the Civil Rights Act for failing to remedy the alleged sexual harassment. The doctrine of *respondeat superior* does not apply to actions under 42 U.S.C. § 1983. *Garrison v. Burke*, 165 F.3d 565, 571 (7th Cir. 1999). Rather, a municipality is responsible for its employees' actions only if the actions were taken pursuant to an unconstitutional policy or custom of the municipality itself. *Id.*

Here, there is no municipal custom or policy permitting sexual harassment–to the contrary, the plaintiff's supervisor specifically made an employee announcement that Chicago Public School policy barred such behavior. *See Vela v. Village of Sauk Village*, 218 F.3d 661, 665 (7th Cir. 2000) (no municipal liability where the village had an express policy against sexual harassment and plaintiff adduced no evidence that such a policy or custom in fact existed). "Policy" or "custom" can take one of three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with "final policymaking authority." *Garrison*, 165 F.3d at 571, citing *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994). The plaintiff's allegations meet none of the above criteria.

Although the plaintiff accuses the Board of Education of not doing enough to deal with the persons who harassed her, shortcomings of this kind are distinct from a policy or custom of discrimination. *Accord, Smith v. Chicago School Reform Board of Trustees*, 165 F.3d 1142, 1149 (7th Cir. 1999), *citing Farmer v. Brennan*, 511 U.S. 825 (1994). The

7

amended complaint does not support an inference that the Board of Education had either an official or unofficial practice of subjecting its employees to sexual harassment or of ignoring complaints of alleged sexual harassment. It may be that Haduch personally failed to enforce the no-harassment policy. But Haduch's alleged failure to rectify the situation cannot be attributed to the Board of Education since he is not a final policymaker. Count II must be dismissed.

In Count III, the plaintiff alleges that the Board of Education retaliated against her protected activity (filing charges with the E.E.O.C.) by giving her poor performance evaluations, expanding her work duties, and transferring her to the day shift. Because it is not the case that she could prove "no set of facts" entitling her to relief, *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), the plaintiff will be permitted to further develop that claim.

Title 42, United States Code, Section 2000e-2 prohibits unlawful employment discrimination practices, and companion section 2000e-3(a) makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" in connection with an unlawful employment practice." *See also Johnson v. Sullivan*, 945 F.2d 976, 980 (7th Cir. 1991). To prevail on a retaliation claim under Title VII, the plaintiff must show that she suffered an adverse job action because of her complaints of harassment. *Hill v. American General Finance, Inc.*, 218 F.3d 639, 644 (7th Cir. 2000), *relying on McKenzie v. Illinois Dep't. of Transp.*, 92 F.3d 473 (7th Cir. 1996).

8

The parties disagree as to whether the actions the plaintiff complains of (undeservedly poor performance evaluations, increased work load, and a transfer to a shift the plaintiff did not want) rose to the level of "adverse" action. According to the Seventh Circuit Court of Appeals,

> An adverse action occurs when an employee is fired or demoted, suffers a decrease in benefits or pay, or is given a significantly lesser job. Not every unwelcome employment action qualifies as an adverse action. Negative reviews, a change in job title, an increased distance to travel to work, or a lateral transfer do not, by themselves, qualify.

*Hill*, 218 F.3d at 644.

The parties also dispute whether the plaintiff must show that she was subjected to "materially" adverse job action. While that may have been an open question in 1996, *see McDonnell v. Cisneros*, 84 F.3d 256, 258-59 (7th Cir. 1996), more recent case law indicates that materiality is required. *See, e.g., Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510-11 (7th Cir. 1999):

> Although we have defined the term broadly, the adverse job action must be "materially" adverse, meaning more than "a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993). We have explained, a materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation. *Id.; see Burlington Indus. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 2268-69, 141 L.Ed.2d 633 (1988) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.")

9

"[N]ot everything that makes an employee unhappy is an actionable adverse action." *Id., citing Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). Negative employee evaluations are not by themselves actionable adverse employment actions. *Id.* Likewise, a shift change that did not significantly affect the plaintiff's hours, pay, duties, or other relevant job aspects, would not be considered an adverse employment action. *Vela v. Village of Sauk Village*, No. 98 C 1199, 1999 WL 558125, at *8 (N.D. Ill. 1999), *aff'd*, 218 F.3d 661, 665 (7th Cir. Jul. 26, 2000) (Coar, J.).

Nevertheless, dismissal of the plaintiff's claims at this stage would be premature. The plaintiff has not identified, and need not identify at the pleading stage, the magnitude of the increase in her workload. As the defendant points out, a shift change might necessarily include some minor changes in the plaintiff's duties; the plaintiff faces a heavy burden in establishing that she suffered materially adverse job action. Still, the plaintiff has made out a *prima facie* case: she complained about sexual harassment and she suffered adverse consequences that, in their totality, might be construed as punitive. The record will require further development as to whether the job changes were materially adverse and whether Haduch was motivated by retaliatory animus. The plaintiff will be permitted to proceed on Count III of the amended complaint.

In Count V, the plaintiff sues both the Board of Education and Chicago Contract, claiming that the defendants engaged in a conspiracy not to take any remedial action to curb the purported harassment the plaintiff was experiencing. But as discussed *supra*, the doctrine of *respondeat superior* does not apply to civil rights actions. "[A] municipality cannot be

held liable under the doctrine of *respondeat superior* for the Section 1985 violations of its employees." *Burns v. Cineplex Odeon*, No. 95 C 5280, 1996 WL 501742, at *12 (N.D. Ill. Sep. 3, 1996) (Nordberg, J.); *accord, Eiland v. Hardesty*, 564 F. Supp. 930, 934 (N.D. Ill. 1982). Even assuming *arguendo* both that non-racial claims are actionable under Section 1985(3) and that Haduch and Chicago Contract supervisors conspired to ignore complaints of sexual harassment, Haduch's actions cannot be imputed to the Board of Education. Count V is dismissed.

Finally, the plaintiff's request for punitive damages must be stricken insofar as the plaintiff seeks an award of punitive damages against the Board of Education. This order disposes of the plaintiff's civil rights claims; regardless, municipalities are not liable for punitive damages under civil rights laws. *Burns*, 1996 WL at *12, *citing Adams v. City of Chicago*, 865 F.Supp. 445, 447 (N.D. Ill. 1994); *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Illinois has reaffirmed immunity for its local governments in the Illinois Local Government and Governmental Employee Tort Immunity Act. 745 ILCS 10/2-102. This Act provides that a "local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it. . . ." *Id.; see also Williams v. Chicago Bd. of Educ.*, No. 97 C 1063, 1997 WL 467289, *8 (N.D. Ill. Aug. 13, 1997) (Conlon, J.). Accordingly, the plaintiff's request for punitive damages against the Board of Education is stricken.

In sum, for all of the foregoing reasons, the motion to dismiss is allowed in part and denied in part. The plaintiff may proceed against the Board of Education only on Counts I,

III and IV (and against the defendant Chicago Contract on Count VI, assuming she can effect service). The amended complaint is dismissed as to Counts II and V; the amended complaint is also dismissed insofar as the plaintiff seeks an award of punitive damages from the Chicago Board of Education.

IT IS THEREFORE ORDERED that the defendant Board of Education's motion to dismiss (docket #14) is granted in part and denied in part. Counts II and V of the amended complaint, along with the plaintiff's request for an award of punitive damages against the Board of Education, are dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The plaintiff may proceed against the Board of Education only on Counts I, III and IV (and against the defendant Chicago Contract Cleaning & Supply Company on Count VI).

IT IS FURTHER ORDERED that the Board of Education, having already answered Counts I and IV, answer or otherwise respond to Count III within twenty-one days of the date of this order. This case remains set for status conference in open court on January 18, 2001, at 2:30 p.m.

ENTER:

*John A. Nordberg*
JOHN A. NORDBERG
United States District Judge

DATED: *December 1, 2000*